## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE MIN <br> 6104 Melvern Dr. <br> Bethesda, MD 20817 <br><br> v. <br><br> ROBERT F. KENNEDY, JR., <br> in his official capacity as the <br> SECRETARY OF HEALTH AND <br> HUMAN SERVICES, <br> 200 Independence Avenue, SW <br> Washington, D.C. 20201 | ) <br> ) <br> ) <br> ) <br> ) <br> )     CASE NO. _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**(Administrative Procedure Act Review of Final Decision of the Public Health Service Board for Correction and its Governing Regulations)**

### I. INTRODUCTION

This action seeks declaratory and injunctive relief for an unlawful denial of a request for reconsideration by the Public Health Service Board for Correction (PHS BFC)— a statutory board authorized to correct errors or injustices in the records of PHS Commissioned Corps officers. In 2022, the PHS BFC determined that Plaintiff had suffered an injustice related to the PHS Commissioned Corps processing of her request for resignation in 2019. Although the PHS BFC purported to grant relief to allow for Plaintiff's reinstatement into the Commissioned Corps, its so-called relief was illusory, infeasible and amounted to a clear violation of the board's mandate to correct an injustice clearly presented to it.

In 2024, after making numerous unsuccessful efforts to be reinstated into the Commissioned Corps, Plaintiff applied to the PHS BFC for reconsideration, arguing that the

1

board's earlier relief failed to correct the injustice it had found. Plaintiff supported her claims with new material demonstrating the clear insufficiency of the board's earlier relief. Relying on Commissioned Corps regulation, the PHS BFC's Executive Secretary denied the application—and precluded a full merits review by a board panel—claiming that the application failed to meet the board's one-year reconsideration deadline and that it was otherwise not within the interest of justice to accept it.

The PHS BFC Executive Secretary's rationale for rejecting Plaintiff's reconsideration application—and the Commissioned Corps regulation upon which they were based—violate controlling provisions of 10 U.S.C. § 1552, which prohibits any time limitations for reconsiderations and only requires that reconsideration applications be supported by materials not previously presented to or considered by the board. Plaintiff's reconsideration request clearly met the standard and therefore required a full merits review.

As demonstrated herein, the PHS BFC Executive Secretary's unlawful denial of Plaintiff's request for reconsideration under an unlawful Commissioned Corps regulation mandate vacating and setting aside the Executive Secretary's decision and the regulation itself.

## II. JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction. Plaintiff raises claims under federal statutes and United States Department of Health and Human Services Public Health Service Commissioned Corps regulations.

2.      The Act of Congress upon which federal question jurisdiction rests is 42 U.S.C. § 213a(a)(12), which entitles all commissioned officers of the PHS Commissioned Corps to "all the rights, benefits, privileges, and immunities now or hereafter provided for commissioned officers

of the Army" under 10 U.S.C. § 1552. Section 1552(a)(1) authorizes the "Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."

3.      Additionally, under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, the Court may set aside final agency decisions that are arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise contrary to law or mandatory procedure.

4.      This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.

5.      Venue in this Court is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391 *et seq*.

### III. THE PARTIES

6.      Plaintiff, Catherine Min, is a United States citizen and a former member of the United States Public Health Service Commissioned Corps, United States Army, and United States Air Force Reserve. She resides at the address provided in the caption above.

7.      Defendant, Robert F. Kennedy, Jr., is the Secretary of the Department of Health and Human Services, under which the Public Health Service is a primary division. The PHS BFC acts on behalf of the Secretary of the Department of Health and Human Services. 42 U.S.C. § 213a(b)(1). The Secretary's official residence is address provided in the caption above.

### IV. STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      On October 12, 2022, the PHS BFC met to consider Plaintiff's initial application for relief, in **Case Number 21-006**. The Board determined that Plaintiff suffered an injustice and recommended reinstatement.

9.      On or about July 24, 2024, Plaintiff applied for reconsideration from the PHS BFC.

10.     On August 7, 2024, a representative of the PHS BFC, by direction of the Executive Secretary of the Board, denied Plaintiff's application for reconsideration.

11.     The PHS BFC's denial of Plaintiff's reconsideration application is a final agency action or is otherwise a reviewable action under the APA.

12.     Plaintiff has exhausted her administrative remedies and this matter is ripe for judicial review.

13.     Pursuant to 28 U.S.C. § 2401(a), Plaintiff's claims must be made within six years of accrual.

14.     Plaintiff's claims accrued on August 7, 2024 when Plaintiff was notified that the PHS BFC Executive Secretary had denied Plaintiff's application for reconsideration.

15.     Plaintiff's claims are timely before this Court.

## V. FACTS

### A. Background Facts

16.     On April 25, 1996, Plaintiff joined the United States Army Reserve (USAR) at seventeen years old, serving for eight years. During that time, she earned her Licensed Practical Nurse, got her degree and certificate as a Registered Nurse, completed her bachelor's degree in nursing science at the University of Maryland, and received her master's degree in nursing administration and informatics.

17.      In 2002, Plaintiff began working as a Research Nurse at the Walter Reed National Military Medical Center.

18.     After completing her USAR obligations, Plaintiff joined the United States Air Force Reserve (USAFR) in 2004 as a Clinical Nurse.

19.     In her civilian capacity, Plaintiff worked as a senior research nurse specialist with the National Institutes of Health (NIH).

20.     In May 2009, Plaintiff commissioned into the PHS as a lieutenant (O-3) nurse and was able to keep her assignment with the NIH.

21.     During her ten years as an officer with the PHS, CDR Min received numerous merit awards and commendations for her work performance and outstanding performance appraisals.

22.     Plaintiff was promoted to the temporary grade of lieutenant commander (O-5) on July 1, 2014.

23.     In or about the Winter of 2018 and Spring of 2019, Plaintiff was in the throes of a highly stressful time in her personal life and career.

24.     On April 4, 2019, Plaintiff was arrested and charged with burglary and theft related to a highly uncharacteristic incident on December 25, 2018 wherein she allegedly entered a home and stole various items totaling over $3,000.

25.     On the day of her arrest, Plaintiff was placed on a one-day period of absence without leave (AWOL).

26.     Plaintiff immediately contacted an NIH liaison and her PHS Adverse Action Officer to inform them of the incident.

27.     On April 11, 2019, Plaintiff preliminarily filled out a form PHS-1373, "Separation of Commissioned Officer," which is used to formally request resignation. She emailed the form to a PHS separations counselor requesting review of the document for completeness before she sent it to her supervisor and ombudsman. However, against Plaintiff's request for a preliminary review, the separations counselor then sent the form to Plaintiff's command without Plaintiff's knowledge.

28.     Thereafter, with the support of her immediate supervisor and upon consulting with her criminal defense attorney, behavioral health professionals, and the NIH Ombudsman Office, Plaintiff attempted to rescind her resignation.

29.     On May 17, 2019, her request to rescind her resignation request was denied.

30.     Plaintiff's commission was withdrawn on May 31, 2019.

31.     On or about April 5, 2021, Plaintiff applied to the PHS BFC, requesting, among other things, that the Board remove the AWOL allegation from her record and reinstate her commission with constructive service credit for the intervening time between her loss of commission and reinstatement. In the alternative, Plaintiff requested that she be granted constructive service credit and allowed to retire with full benefits having combined creditable service of twenty years.

**B. Plaintiff's Initial Application to the PHS BFC**

32.     10 U.S.C. § 1552 provides that the "Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The statute further requires corrections to be made "by the Secretary acting through boards of civilians of the executive part of that military department." *Id.*

33.     Although the PHS Commissioned Corps is not a "military department," Congress has directed that "[c]ommissioned officers of the Service or their surviving beneficiaries are entitled to all the rights, benefits, privileges, and immunities now or hereafter provided for commissioned officers of the Army or their surviving beneficiaries" under enumerated provisions of title 10, including 10 U.S.C. § 1552. 42 U.S.C. § 213a(a)(12).

34.     Section 213a further specifies that "authority vested by title 10 in the 'military departments', 'the Secretary concerned' . . . with respect to the rights, privileges, immunities, and benefits referred to in subsection (a) shall be exercised, with respect to commissioned officers of the Service, by the Secretary of Health and Human Services or the designee of such Secretary."

35.    The U.S. Department of Health and Human Services has promulgated a directive that establishes the procedures for making application for the correction of personnel records of an officer in the PHS Commissioned Corps, the consideration of applications by the Board for Correction of Commissioned Corps Records (i.e. PHS BFC), and for settling claims or determining monetary benefits. Commissioned Corps Directive (CCD) 129.01, *Board for Correction* (July 16, 2020).

36.    The directive states that it was issued "under authority of 10 U.S.C. §1552 and 42 U.S.C. §213a(a)(12), which authorizes the Secretary of HHS, under procedures approved by him/her, and acting through a Board of HHS civilian employees (i.e., non-uniformed), to correct any record maintained by the Corps on any present or former Corps officer when the Secretary considers such action necessary to correct an error or remove an injustice." *Id.* ¶ 6.

37.    The PHS BFC may seek an advisory opinion from Headquarters, Commissioned Corps (CCHQ), which is tasked with recommending a disposition on the case. *See id.* ¶ 6-8(b)(3).

38.    In support of her request for relief, Plaintiff argued she should be reinstated because the submission of her resignation request was made under duress and time pressure and, therefore, constituted an involuntary resignation.

39.    Plaintiff next argued that the Commissioned Corps' denial of Plaintiff's ability to rescind her resignation was agency misinterpretation because she relied on the information provided to her in PHS policy that she could rescind her resignation with approval.

40.    Plaintiff further argued that she should have been advised of potential disciplinary actions rather than being told she should "hurry and resign" before any disciplinary action occurred.

41.    Finally, Plaintiff argued that the AWOL record should be removed because she was released from her probation sentence and her record had been expunged and that removal was

consistent with Commissioned Corps policy for excusing absences in cases where the infraction causing the absence is favorably resolved in civilian criminal court.

42.     Upon accepting Plaintiff's application, the PHS BFC sought an advisory opinion from CCHQ, which was issued on July 26, 2022.

43.     The CCHQ advisory opinion recommended denial of Plaintiff's application.

44.     The CCHQ advisory opinion conceded that Plaintiff had resigned her commission under enormous stress but had "failed to make a convincing argument or provide relative [sic] evidence that she was misinformed of any potential outcomes based on her legal struggles as she claimed in her application."

45.     Plaintiff responded to the CCHQ advisory opinion on September 5, 2022.

46.     Among other arguments, Plaintiff's response asserted that the advisory opinion failed to consider the extenuating stressors and circumstances that led to Plaintiff's misconduct, her stellar prior record with the PHS, and all the ways in which she has grown from this incident, both by seeking mental health treatment and serving her community to make up for her wrongdoing.

47.     Her response next argued that the advisory opinion failed to consider the misleading and coercive advice given to Plaintiff by her Adverse Action Officer (AAO) which pushed her to resign and impeded her ability to seek advice upon trying to rescind the resignation.

48.     Her response next argued that the advisory opinion failed consider that Plaintiff's PHS-1373 was pushed forward for signatures before she had obtained the signatures of her supervisor or AAO in violation of Commissioned Corps regulation, thereby discrediting the entire separation process.

**C. The Board's Determination Plaintiff Suffered an Injustice Related to Her Resignation**

49.    The PHS BFC panel convened on October 12, 2022 and published "minutes" containing the board's decision rationale on October 21, 2022.

50.    Although the Board found that Plaintiff's resignation was voluntary because it was properly tendered and the decision not to allow it to be withdrawn was within the Director of CCHQ's discretion, it determined that "that the applicant was not fully advised of all of her options, including the option to face a board of inquiry and present mitigating evidence of mental illness at the time of her criminal behavior."

51.    The Board acknowledged Plaintiff's stellar career up until her criminal infraction and further considered a statement from her psychiatrist that she was not in a state of mind to decide to resign when she did. The Board found that "her mental state was not considered when she resigned and concluded that the circumstances surrounding the resignation processing constituted an injustice to the officer because it denied her the opportunity to have mitigating factors such as her mental state at the time that the crime was committed considered as part of the Corps' review of her ability to continue on active duty."

52.    Having found an injustice in Plaintiff's record the Board unanimously recommended, in relevant part:

a. The applicant is to be offered reinstatement as an O-5 in NIH as soon as possible.

1. NIH must offer her reinstatement at the O-5 to a billet she is qualified to hold.

2. She must meet all current health (including mental health), fitness, and licensing requirements for a Corps officer.

53.    The PHS BFC's recommendation contained an ominous caveat, stating:

The applicant should be made aware that if she accepts reinstatement, she may still be subject to a board of inquiry at the Corps' discretion because she does have a criminal conviction for conduct that occurred while the applicant was on active

duty. If she is brought before a board of inquiry, her mental health records at the time of resignation and postseparation must be considered as a part of the deliberations; however, nothing in the Board's decision should be interpreted as prohibiting the Corps from convening a board of inquiry or limiting the nature of any disciplinary action (including dishonorable discharge) against the applicant that a board of inquiry could recommend as a result of the applicant's criminal conviction.

54.     The Board directed no changes to Plaintiff's record to facilitate any "offer" of reinstatement.

55.     After the Board's decision, Plaintiff received no communications from the PHS BFC or PHS offering her reinstatement in accordance with the Board's directive and there was no indication the PHS BFC or PHS took any steps to facilitate Plaintiff's reinstatement.

**D. Plaintiff attempts to apply for an active-duty and reserve commissions**

56.     In June 2020, before the PHS BFC had rendered its decision, Plaintiff had at least twice applied for an active-duty commission and received no status communication.

57.     Plaintiff applied for a commission with USPHS Reserve Affairs on June 8, 2023, which delayed because, according to the PHS, it required an age waiver.

58.     In February 2024, when Plaintiff inquired about the status of her 2020 applications and Reserve application, PHS informed her that "one of your 2020 applications was closed because you had two open simultaneously for general duty. The second application for general duty was closed because you requested to apply for Ready Reserve."

59.     When Plaintiff asked whether she could convert her pending Reserve application to an active-duty application, she was merely told she must close her Reserve application.

60.     Plaintiff subsequently submitted another active-duty application on March 24, 2024. She was told it was delayed because she required an age waiver and eventually closed because she had applied for an active-duty position while the delayed Reserve application was pending.

61.     Plaintiff submitted an active-duty application on March 24, 2024.  Plaintiff followed up multiple times with no response.

62.     Ultimately, all of Plaintiff's attempts to effectuate her reinstatement consistent with the PHS BFC's decision were met with delays or were otherwise closed or ignored for various intersecting minor reasons or technicalities.

**E. Plaintiff applies to the PHS BFC for reconsideration**

63.     On December 23, 2016, Congress amended 10 U.S.C. § 1552 to contain a mandatory administrative reconsideration provision, stating "Any request for reconsideration of a determination of a board under this section, *no matter when filed*, shall be reconsidered by a board under this section *if supported by materials not previously presented to or considered by the board in making such determination*." *Id.* § (a)(3)(D) (as amended by Pub. L. No. 114-328 § 534, 130 Stat. 2122 (2016)) (emphasis added).

64.     Section (a)(3)(D) unambiguously prohibits any time requirement for reconsiderations and required only that a reconsideration request be supported by materials not previously presented to or considered by the board in making such determination.

65.     At the time section 1552 was amended, PHS BFC regulations did not impose any deadline for filing reconsideration applications. PHS Commissioned Corps Instruction CC49.9, *Board for Correction of PHS Commissioned Corps Records,* § I(11) (September 8, 1981).

66.     On July 16, 2020, despite this unambiguous amendment being enshrined in statute for three-and-a-half years, HHS replaced CC49.9 with CCD 129.01, which added a reconsideration provision stating that "The applicant has one year to request reconsideration of the ED's decision on the Board's recommendation." CCD 129.01 ¶ 6-6(k).

67.    The reconsideration provision further states that "[r]econsideration is granted only if newly discovered evidence or information, not previously considered by the Board, is presented by the applicant or otherwise comes to the attention of the Board and then only if the newly discovered evidence or information would, if true, result in a determination other than that originally made." *Id.*

68.    The reconsideration provision further contains a "reasonable diligence" requirement, stating that "The [Executive Secretary] may refuse to consider evidence or information claimed to be newly discovered if he/she finds that such materials could have been presented to the Board prior to its original determination if the applicant or his counsel had exercised reasonable diligence."

69.    Determinations about whether an application meets these timing and evidentiary thresholds are made by Executive Secretary, not the civilian board members, and if the Executive Secretary rejects a reconsideration application, the case is not considered on the merits by a board panel.

70.    The July 16, 2020 version of CCD 129.01 is still controlling version of the regulation.

71.    On or about July 24, 2024, Plaintiff applied for reconsideration from the PHS BFC.

72.    The gravamen of Plaintiff's application was that the relief the Board had granted in its initial application was "not actionable" and otherwise insufficient to allow for Plaintiff to recommission into the Commissioned Corps and that it amounted to half-a-loaf relief and otherwise amounted to a failure to take steps to grant thorough and fitting relief to correct an injustice.

73.    Plaintiff's application acknowledged the PHS BFC's policy of requiring reconsideration applications to be submitted within one year of the previous decision but argued that the case was unusual the relief granted was not obtainable, which was only discovered after the limitation

period. The application further argued that limitation periods are waived when a correction board fails to grant full relief to a service member.

74.     Plaintiff's argument that the Board's relief was insufficient was supported by federal court case law and evidence of Plaintiff's ultimately futile attempts to seek reinstatement after the PHS BFC's initial decision requiring that reinstatement be offered to her.

75.     Plaintiff requested constructive-service credit sufficient to allow her "to retire with 20 years of uniformed service credit or in the alternative, retroactively reinstate her to active duty with all attendant back pay and allowances, attorney's fees and any other relief this Board deems necessary."

76.     On August 7, 2024, a representative from the PHS BFC informed Plaintiff's counsel, by email, that "After further review and direction of from the Executive Secretary, we regret to inform you that your client's application has been denied due to its untimely filing. Additionally, it has been determined that the interest of justice does not require its acceptance."

## VI. LEGAL CLAIMS

**Count I: Violation of the Administrative Procedure Act – Unlawful Agency Regulation**

77.     The preceding paragraphs are incorporated herein by reference.

78.     Pursuant to the APA, courts must set aside any agency action that is in excess of that agency's "statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

79.     Courts have long recognized their authority under the APA to vacate and set aside unlawful regulations. Indeed, "'[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated — not that their application to the individual petitioners is proscribed.'" *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n. 21 (D.C. Cir. 1989)); *see*

*also Lipsman v. Sec'y of the Army*, 335 F. Supp. 2d 48, 56 (D.D.C. 2004) (striking a reconsideration provision in ABCMR regulations that permitted staff members to make substantive evidentiary determinations in violation of 10 U.S.C. § 1552).

80.    42 U.S.C. § 213a(a)(12) entitles all commissioned officers of the PHS Commissioned Corps to "all the rights, benefits, privileges, and immunities now or hereafter provided for commissioned officers of the Army" under 10 U.S.C. § 1552.

81.    Therefore, by express statutory adoption, the PHS BFC is subject to the reconsideration provision at 10 U.S.C. § 1552(a)(3)(D), which is an express right afforded to applicants.

82.    Further, CCD 129.01 acknowledges that it is "issued under authority of 10 U.S.C. §1552 and 42 U.S.C. § 213a(a)(12)."

83.    Section 1552(a)(3)(D) prohibits any time limitation for reconsideration applications.

84.    CCD 129.01 ¶ 6-6(k)'s one-year limitation therefore violates 10 U.S.C. § 1552(a)(3)(D).

85.    10 U.S.C. § 1552(a)(3)(D) sets a threshold required only that reconsideration applications be supported by "materials not previously presented to or considered by the board in making such determination."

86.    Section 1552(a)(3)(D) does not require that supporting evidence or information be "newly discovered" or that the evidence or information be such that it would "result in a determination other than originally made."

87.    Section 1552(a)(3)(D) does not contain a heightened standard that the applicant or counsel exercise reasonable diligence with respect to newly discovered evidence or information.

88.    Therefore, CCD 129.01 ¶ 6-6(k)'s imposition of a reasonable-diligence standard; its requirement that reconsideration applications require that supporting evidence or information be

"newly discovered"; and that the evidence or information be such that it would "result in a determination other than originally made" all violate section 1552(a)(3)(D).

89.     CCD 129.01 ¶ 6-6(k) has been in effect since at least 2020 and so it stands to reason that the Executive Secretary has rejected potentially numerous applications that should have otherwise received full merits consideration by the civilian board panel. Thus, vacating the regulation would not only be an appropriate remedy under the facts of this case but would serve a broader good for other current and former Commissioned Corps members.

**Count II: Violation of the Administrative Procedure Act — The Executive Secretary's decision to deny Plaintiff's reconsideration application on timeliness grounds is arbitrary, capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence.**

90.     The preceding paragraphs are incorporated herein by reference.

91.     An agency decision violates the APA if "it is arbitrary and capricious, contrary to law, or unsupported by substantial evidence." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997).

92.     42 U.S.C. § 213a(a)(12) entitles all commissioned officers of the PHS Commissioned Corps to "all the rights, benefits, privileges, and immunities now or hereafter provided for commissioned officers of the Army" under 10 U.S.C. § 1552.

93.     10 U.S.C. § 1552(a)(3)(D) prohibits any time limitation for reconsideration applications.

94.     The PHS BFC Executive Secretary directed the rejection of Plaintiff's reconsideration request on timeliness grounds and, thus, precluded consideration of the merits of Plaintiff's application.

95.     The PHS BFC's notice failed to cite any provision of law upon which it was relying but whether the Executive Secretary was relying on CCD 129.01 ¶ 6-6(k) or any other source of authority, the Executive Secretary's decision violates section 1552(a)(3)(D).

96.     Plaintiff's reconsideration application met the threshold for a full merits reconsideration under section 1552(a)(3)(D) because it was supported by materials not previously presented to or considered by the board in making its earlier decision.

97.     Plaintiff's reconsideration request relied upon evidence that the board's earlier decision failed to grant full and effective relief in violation of its mandate after finding an injustice in Plaintiff's record. The evidence in support of Plaintiff's claim could not have been presented to or considered by the Board in its earlier determination because is bears directly on Plaintiff's challenge to the implementation of that decision.

98.     The Executive Secretary's denial of Plaintiff's reconsideration application on timeliness grounds plainly violates the APA.

**Count III: Violation of the Administrative Procedure Act — The Executive Secretary's decision to deny Plaintiff's reconsideration application on interest-of-justice grounds is arbitrary, capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence.**

99.     The preceding paragraphs are incorporated herein by reference.

100.    An agency decision violates the APA if "it is arbitrary and capricious, contrary to law, or unsupported by substantial evidence." *Frizelle*, 111 F.3d at 176.

101.    42 U.S.C. § 213a(a)(12) entitles all commissioned officers of the PHS Commissioned Corps to "all the rights, benefits, privileges, and immunities now or hereafter provided for commissioned officers of the Army" under 10 U.S.C. § 1552.

102.    10 U.S.C. § 1552(a)(3)(D) does not authorize the PHS BFC to deny reconsideration under an "interest of justice" standard.

103.    To the extent the Executive Secretary's interest-of-justice rationale is informed by a finding that, under CCD 129.01 ¶ 6-6(k), Plaintiff's evidence could have be could have been presented to

the PHS BFC prior to its original determination if the applicant or her counsel had exercised reasonable diligence, it is unlawful.

104.    Section 1552(a)(3)(D) does not authorize the PHS BFC to impose the "reasonable diligence" standard nor does it permit denial based on a determination that newly discovered evidence or information could have been presented to the PHS BFC prior to its earlier determination.

105.    The sole standard for compulsory acceptance and full merits review is whether the application for reconsideration is supported by materials not previously presented to or considered by the board in making its earlier decision. 10 U.S.C. § 1552(a)(3)(D); 42 U.S.C. § 213a(a)(12). The Executive Secretary applied an unlawful standard to deny Plaintiff's application for reconsideration.

106.    As detailed above, Plaintiff's reconsideration application met the threshold for full merits reconsideration under section 1552(a)(3)(D) because it was supported by materials not previously presented to or considered by the board in making its earlier decision.

107.    The Executive Secretary's rejection of Plaintiff's reconsideration application on interest-of-justice grounds violates the APA.

## VII.  PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court grant the following relief:

(A)    Enter judgment in favor of Plaintiff on all counts of this complaint;

(B)    Vacate and set aside CCD 129.01 ¶ 6-6(k) under 5 U.S.C. § 706(2);

(C)    Hold unlawful, vacate and set aside the PHS BFC Executive Secretary's decision to deny Plaintiff's reconsideration application;

(D)     Remand to the agency with instructions to consider Plaintiff's application consistent with the Court's ruling; and

(E)     Upon proper application, award attorney fees under the Equal Access to Justice Act;

(F)     Award such other relief as the Court deems appropriate.


                                    Respectfully submitted,

                                    */s/Brian D. Schenk*

                                    Brian D. Schenk
                                    (MN #0391577)
                                    *Of counsel*, Law Office of Shannon James
                                    1629 K St NW Suite 300
                                    Washington, D.C. 20006

                                    **Principal Law Office:**
                                    400 S. 4th Street, Suite 401-510
                                    Minneapolis, MN 55415
                                    Ph: (202) 557-6570

Dated: February 27, 2026